IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FEDEX TRADE NETWORKS, INC.      *

                                 *

v.                               *      Civil No. WMN-11-890

                                 *

UNITED STATES OF AMERICA    *

et al.                        *

                                 *

   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Before the Court are three motions: a motion to dismiss filed by Defendants Zachary Beck and Lisa A. Beck, individually and as administrator of the estate of Jonathan P. Beck and as guardian of the minor child M.B. (the Beck Defendants or the Becks), ECF No. 16; a motion for leave to file an amended complaint filed by Plaintiff Fedex Trade Networks, Inc. (Fedex), ECF No. 29; and a motion to dismiss for lack of jurisdiction filed by the United States, ECF No. 33.  The motions are all ripe.  Upon review of the filings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion to amend will be granted, the Beck Defendants' motion to dismiss will be granted, and the government's motion to dismiss will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case has degenerated into somewhat of a procedural quagmire due, in large part, to the missteps of the government.

At issue is which party will ultimately receive the almost $400,000 in funds seized by the Secret Service and now held by the government. Although not particularly germane to the motions at hand, the Court notes preliminarily that the Becks have offered no substantive support for their entitlement to the funds but rest their claim largely on procedural technicalities. FedEx, on the other hand, has proffered considerable evidence that it is entitled to most if not all of the seized funds but has been placed in a procedurally compromised position through little fault of its own. The cause of FedEx's procedurally compromised position appears to rest largely on the shoulders of the government. The facts as set forth in the Complaint are as follows.

Jonathan Beck (Mr. Beck), deceased ex-husband of Defendant Lisa Beck (Ms. Beck) and father to Defendants Zachary Beck and minor child, M.B., worked for Plaintiff FedEx until 2009. In 1999, Mr. Beck created a front company called JL Services Co. (JL Services), which he then fraudulently established as a vendor of FedEx. JL Services never provided any goods or services to FedEx. Nevertheless from 2001 to 2009, Mr. Beck, using his position as a manager at FedEx, issued over 700 vendor checks totaling more than $850,000 from FedEx payable to JL Services, all but two of which were deposited in a JL Services bank account.

Starting in 2003, Mr. Beck began writing checks from the JL Services account to himself. From 2003 through 2009, he deposited these checks at various times into three different personal bank accounts at M&T Bank. Mr. Beck also opened a Scottrade online brokerage account, which he funded from two of the M&T bank accounts.

On March 30, 2009, the Becks divorced.

In September and October 2009, the Secret Service seized four of Mr. Beck's accounts: two of the three M&T Bank accounts, the Scottrade account, and a Maryland College Investment Plan account. All but the college savings account were titled solely to Mr. Beck. That college account was titled in the name of Lisa Beck and held just $3,113.88. In sum, the Secret Service seized $386,608.50, all of which is alleged to belong to FedEx.

Shortly after the Secret Service began seizing the accounts, Mr. Beck committed suicide on September 21, 2009. Mr. Beck's will, dated March 4, 2000, named Ms. Beck as the personal representative and primary beneficiary. Mr. Beck's children, Defendant Zachary Beck and minor child, M.B., were named as additional beneficiaries. Notwithstanding Ms. Beck's divorce from Mr. Beck, which by operation of law should have revoked her designation as personal representative, see Md. Code Ann., Est. & Trusts § 4-105(4), Ms. Beck was appointed and served as personal representative of Mr. Beck's estate, without objection.

On November 20, 2009, FedEx filed a petition for remission with the Secret Service requesting a return of the seized funds. On December 3, 2009, the Becks timely filed a Claim of Ownership with the Secret Service regarding those same funds. This Court has previously found that the Becks sent their claim to the proper address as provided by the Secret Service in its notices of forfeiture.[1] Furthermore, the Becks sent their claim to that address by one of the methods specified in the government's notice and it is undisputed that the claim arrived at the address given by the government on the date it was required to be there. The government, however, improperly deemed the claim untimely because it took an additional day to reach the "appropriate official" in the Secret Service's Asset Forfeiture Division. The government took this position despite the fact that the "appropriate official" was nowhere identified on the government's notice. As a result of taking that position, however, the government did not file a complaint for forfeiture within 90 days of receipt of the ownership claim as it was required to do under 18 U.S.C. § 983(a)(3)(A).

Also because it erroneously decided that the Becks' claim was not timely filed, the government proceeded with the administrative forfeiture process. Thus, on September 9, 2010,

---

[1] See this Court's memorandum opinion dated March 10, 2011, in Beck v. United States, Civ. No. WMN-10-2765 (the Related Action).

the Secret Service issued a finding in response to FedEx's
petition for remission that the funds belonged to FedEx. A day
later, FedEx and the Secret Service entered into a release and
hold harmless agreement (the FedEx Contract), wherein the Secret
Service agreed to return all of the seized funds (less
administrative costs) to FedEx and FedEx agreed to release the
Secret Service from any remaining claims. The Secret Service,
however, did not remit the funds to FedEx.

On October 6, 2010, shortly after the FedEx Contract was
executed, the Becks filed the Related Action in this Court,
claiming that the Secret Service wrongfully seized the assets
and ignored the Becks' timely notice of claim to the money. The
Becks' Complaint named the United States and the Secret Service
as defendants. FedEx was not joined in that suit.

The government moved to dismiss the Beck's complaint in the
Related Action, arguing that the Becks' Claim of Ownership was
untimely. Finding the government's arguments wholly without
merit, this Court denied the government's motion to dismiss on
March 10, 2011. By finding that the Becks' claim was timely,
the Court by necessity also found that the government had failed
to file a timely complaint. In the memorandum denying the
government's motion to dismiss, however, the Court strongly
indicated that the limitations period for the government to file
its forfeiture complaint would be equitably tolled, but, as the

parties had not briefed the issue, the Court granted the Becks leave to file a memorandum opposing equitable tolling. See March 10, 2011, Mem. at 11-13.

Notwithstanding the potential opportunity to file a forfeiture complaint and challenge the merits of the Beck's claim of entitlement to funds which the government had already determined to belong to FedEx and had agreed to return to FedEx, the government reached a settlement with the Becks, wherein the government agreed to pay the Becks half the seized funds and the Becks agreed to dismiss with prejudice all their claims against the government. In late March 2011, FedEx learned of this tentative settlement between the Becks and the government. On March 25, 2011, FedEx filed a motion to intervene and requested an emergency hearing on the issue. On March 31, 2011, the Becks filed a notice of dismissal of the Related Action pursuant to Fed. R. Civ. P. 41(a). On April 5, 2011, the Court denied FedEx's motion to intervene, finding it was moot in light of the voluntary dismissal. Beck v. United States, ECF No. 22.

Immediately thereafter, FedEx filed the instant action. As originally filed, the case included three counts: (1) a claim seeking "21 U.S.C. § 853(n) Constructive or Other Equitable Trust and Accounting against all Defendants"; (2) a claim seeking a declaratory judgment that FedEx is the rightful owner of the seized funds; and (3) a claim against the United States

for breach of the FedEx Contract.  Shortly after filing the
Complaint, FedEx filed a motion for a Temporary Restraining
Order/Preliminary Injunction, asking the Court to enjoin the
government from paying the Becks any of the seized funds.
Before the scheduled hearing on that motion could go forward,
the government informed the Court that it had halted all
processing of the disputed funds, effectively freezing those
funds and rendering the motion for a temporary restraining order
or preliminary injunction moot.

The Beck Defendants then filed a motion to dismiss arguing,
inter alia, that there is no private cause of action under the
federal criminal forfeiture statute, 21 U.S.C. § 853(n).  ECF
No. 16.  Essentially conceding that issue, FedEx filed a motion
for leave to file an amended complaint that eliminated all
reference to § 853.  ECF No. 29.  In the Proposed Amended
Complaint, FedEx recasts its claim against the Beck Defendants
in Count One as a claim for "unjust enrichment."  The Beck
Defendants have opposed FedEx's motion to amend on the ground,
inter alia, that amendment would be futile in that the claims
against them are, for the most part, claims against the estate
of Mr. Beck and, as such, are barred by the applicable statute
of limitations, Md. Code Ann., Est. & Trusts § 8-103.

The government has also filed a motion to dismiss.  ECF No.
33.  In that motion the government argues that the claim against

the United States is a contract action and, as such, under 28 U.S.C. § 1491(a)(1), jurisdiction over the claim lies exclusively in the United States Court of Claims.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, . . . , to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Detailed factual allegations" are not required, but allegations must be more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action[.]" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). In considering such a motion, the court is required to accept as true all well-pled allegations in the complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997) (citing Little v. Federal Bureau of Investigation, 1 F.3d 255, 256 (4th Cir. 1993)).

## II. DISCUSSION

### A. Claims Against the Beck Defendants

With the possible exception of a claim over the relatively small amount of funds that were in the college savings account titled in Lisa Beck's name, the Beck Defendants assert that FedEx's claims could have and should have been brought against Mr. Beck's estate. FedEx's claims to the seized funds are based upon Mr. Beck's fraudulent conduct and, as such, are claims that could have been brought against Mr. Beck while he was still living. The Beck Defendants assert that under § 8-103(a) of Maryland's Estates and Trusts Article claims such as these, if not brought against the alleged individual in his lifetime, must be brought against the estate of the deceased within 6 months of his death or be forever lost.

Section 8-103(a) provides that:

> all claims against an estate of a decedent, whether
> due or to become due, absolute or contingent,
> liquidated or unliquidated, founded on contract, tort,
> or other legal basis, are forever barred against the
> estate, the personal representative, and the heirs and
> legatees, unless presented within the earlier of the
> following dates:
>
> (1) 6 months after the date of the decedent's death;
> or
>
> (2) 2 months after the personal representative mails
> or otherwise delivers to the creditor a copy of a
> notice in the form required by § 7-103 of this article
> or other written notice, notifying the creditor that
> his claim will be barred unless he presents the claim

within 2 months from the mailing or other delivery of
the notice.

Md. Code Ann., Est. & Trusts § 8-103(a).  Lisa Beck did not

provide FedEx notice under § 8-103(a)(2) and, thus, the Beck

Defendants argue that FedEx's claims had to have been brought on

or before March 30, 2010, six months after Mr. Beck's death.

In opposing this aspect of the Beck Defendants' motion,

FedEx makes two arguments.  First, FedEx contends that because

it is suing the Becks in their individual capacities, and not as

estate representatives or beneficiaries, Maryland's general

three year statute of limitations, Md. Code Ann., Cts. & Jud.

Proc. § 5-101, applies to its claims and not § 8-103 of the

Estates and Trust Article.  ECF No. 26 at 8.[2]  In support of this

argument, FedEx unsuccessfully tries to distinguish this case

from one of the cases primarily relied upon by the Beck

Defendants, Hamilton v. Caplan, 518 A.2d 1087 (Md. Ct. Spec.

App. 1987).

---

[2] The Beck Defendants concede that "FedEx could arguably maintain
an unjust enrichment action against Lisa Beck for the $3,113.88
in the College Account," ECF No. 37 at 6 n.3, and that this
claim would not be subject to § 8-103(a) because there is no
allegation that the account was in the name of Mr. Beck.  As
such, a claim could not be brought against the estate as the
funds would not have gone into the estate.  The Beck Defendants
assert, however, that this Court would not have jurisdiction
over this claim against her as an individual as it falls under
the amount in controversy requirement for diversity
jurisdiction.

In <u>Hamilton</u>, the plaintiff alleged that she gave her

brother $16,870 to invest on her behalf.  The plaintiff's

brother was also her accountant and handled her financial

affairs.  After her brother died, the plaintiff asserted that

the money belonged to her and was never a part of the estate.

At trial, the jury found that the plaintiff had indeed

given the money to her brother to invest on her behalf.  Thus,

the trial judge concluded, she had a claim against her brother's

estate for an accounting of those funds.  The trial court also

found, however, that her claim was barred under § 8-103 because

she had failed to file a claim with the estate for return of the

investment funds within the six month period prescribed by that

statute.[3]

On appeal, the plaintiff argued that the investment funds

were never a part of her late brother's estate and, thus, could

not be barred by the Estates and Trust Article as no claim could

have been filed against the estate.  To evaluate this argument,

the Court of Special Appeals found it necessary to "first define

what is meant by a 'claim against an estate of a decedent.'"

<u>Id.</u> at 1098.  Turning to similar statutes from other

jurisdictions, the court noted that the word claim as used in

---

[3] Prior to 1989, the limitations period for presenting claims to
the estate was triggered by the first appointment of a personal
representative.  <u>See</u> <u>Imbesi v. Carpenter Realty Corp.</u>, 744 A.2d
549, 553-554 (Md. 2000) (discussing legislative history of
statute).

those statutes "'has been construed to mean debts or demands of
a pecuniary nature <u>that could have been enforced against the</u>
<u>deceased in his lifetime and could have been reduced to a simple</u>
<u>money judgment</u>. The phrase "debts or demands" has also been
construed to include claims of creditors that could be enforced
in equity.'" <u>Id.</u> (quoting 31 Am. Jur. 2d Executors &
Administrators § 276) (emphasis added). Adopting this
definition, the court found that, because "[w]ith this claim,
[the plaintiff] stands in the shoes of a creditor" and the claim
was "a demand of a pecuniary nature which could have been
enforced against the decedent in his lifetime," it should have
been brought within the six month period prescribed by § 8-103.
<u>Id.</u> Because it was not, it was barred.

Here, based upon the allegations in the Complaint, FedEx
certainly could have brought suit against Mr. Beck in his
lifetime to obtain a judgment for the amount of money that FedEx
asserts he obtained from it through deceptive and fraudulent
means. FedEx never denies that it could have filed suit against
Mr. Beck to recover the fraudulently obtained funds. Instead,
it appears to be attempting to distinguish the holding of
<u>Hamilton</u> on the ground that the funds were not in the actual
possession of Mr. Beck at the time of his death. ECF No. 26 at
11 (characterizing the holding of <u>Hamilton</u> as "the plaintiff's
claims to the disputed property equated to the claims of a

creditor against the estate because the disputed property was in the possession of the decedent at the time of death and the property was distributed to the beneficiaries through the estate").

FedEx's distinction is not supported by the statute or the case law.  The six month statute of limitations in suits against executors or administrators has the purpose of requiring claimants seeking damages resulting from conduct of a decedent to make claim by suit within six months "so that the personal representative of the decedent can make the prompt settlement of the estate contemplated by the law without liability for claims not filed within the time and in the manner prescribed." Bertonazzi v. Hillman, 216 A.2d 723 (Md. 1966).  The claims subject to this limitations period are not exclusively claims for particular property that was in the possession of the decedent but are frequently, as here, contingent or unliquidated.  See, e.g., Bertonazzi (personal injury action alleging negligence); Berket v. Aldridge, 216 A.2d 910 (Md. 1966) (action for injuries sustained in automobile accident); Yingling v. Smith, 269 A.2d 612 (Md. 1970) (claim seeking specific performance of a contract).

FedEx's interpretation would effectively eviscerate any protection for estate representatives or beneficiaries provided by § 8-103.  If creditors of the decedent could simply wait

until the property of the estate is distributed and the estate

closed and then bring suit against beneficiaries of the estate,

individually, alleging that the beneficiaries were unjustly

enriched, § 8-103 would be a nullity.  That is not the teaching

of Hamilton.

FedEx next argues that, should this case be governed by the

statute of limitations in the Estates and Trusts Article, it is

§ 8-103(c) that applies to its claims and not § 8-103(a).

Section 8-103(c), states:

> (c) Conduct of Personal Representative. – A claim
> against the estate based on the conduct of or a
> contract with a personal representative is barred
> unless an action is commenced against the estate
> within six months of the date the claim arose.

Id. § 8-103(c).  FedEx asserts that its claims against the

estate "arose" when the Beck Defendants entered into the

settlement with the government.  To support this position, FedEx

looks to First Nat. Bank of Md. v. Shpritz, 493 A.2d 410 (Md.

Ct. Spec. App. 1985).

In Shpritz, the decedent, Billy Rankin, and the plaintiff,

Manuel Shpritz, had developed certain products for the care of

contact lenses.  Rankin and Shpritz then entered into several

contracts with a pharmaceutical company to market and sell the

products.  Under these contracts, Rankin was entitled to a

certain percentage of the profits and Rankin, in turn, was

obligated to pay a certain percentage of those royalties to

Shpritz.  Rankin died on January 8, 1981, one day after filing
suit against the pharmaceutical company on contracts unrelated
to the contracts in which Shpritz was involved.  The defendants
were appointed personal representatives of Rankin's estate on
February 10, 1981.

As personal representatives of the estate, the defendants
continued the suit Rankin had filed against the pharmaceutical
company and, in the process of discovery in that case, learned
that the company had failed to make proper royalty payment to
Rankin under the contracts in which Shpritz had an interest.
The attorneys for the estate requested Shpritz to testify in the
estate's case against the company and promised that, after the
trial was over, they would turn over to Shpritz the information
that they had against the company so that Shpritz could bring a
separate suit against the company.  "The attorneys made it clear
that they were representing the estate only and that if Shpritz
wanted to recover any unpaid royalties owed to him, he would
have to file suit himself."  493 A.2d at 415.

Contrary to those representations, at the trial, the
estate's attorneys argued for and were awarded the full amount
of the unpaid royalties owed to Rankin and Shpritz.  Within a
few weeks of the conclusion of the trial, on December 27, 1982,
Shpritz filed a claim with the estate for his portion of the
royalties.  The personal representatives rejected the claim on

15

the ground that it was barred under § 8-103(a) because it was
not filed within six months of the date of their appointment.
Shpritz then brought suit against the personal representatives
of the Rankin estate.  Id. at 413.  The trial court rejected the
defendants' assertion that Shpritz's claims were barred under §
8-103(a).

In affirming that ruling, the Maryland Court of Special
Appeals held that that Shpritz's claim was governed, not by § 8-
103(a), but by § 8-103(c).  The court observed that "[s]ection
8-103(c) addresses claims against an estate which arise out of
the conduct of a personal representative, as opposed to conduct
of the decedent during his lifetime.  Accordingly, § 8-103(c)
provides a statute of limitations for claims that arise after
death."  Id. at 416 (citations and internal quotations omitted,
emphasis added in Shpritz).  The court continued, "[Section 8-
103(a)] clearly does not encompass a claim arising after death
which, although seeking assets held by an estate, is founded
upon the wrongful acts of the personal representatives. . . .
Shpritz's claim against the estate was unrelated to any conduct
of Billy Rankin but rather arose out of the personal
representatives' tortious acquisition and retention of Shpritz's
royalties and, therefore, was not barred by § 8-103(a)."  Id.
(emphasis added by this Court).

Ignoring this clear teaching from Shpritz, FedEx casts it as holding, "[w]hen an estate prevails in a lawsuit and obtains funds to which a third-party has an interest, that third-party has six (6) months from the date of the judgment or settlement to file his claim with the estate." ECF No. 26 at 13. The determining factor in Shpritz, however, was not when a claim was settled or resulted in a judgment. Instead, the determining factor was whether the claim arose out the conduct of the decedent or whether it arose out of the conduct of the personal representative. Here, the claim clearly arose out of the conduct of Mr. Beck.

Accordingly, the Court finds that, with the exception of the funds in the college account that were not a part of the estate, FedEx's claims against the Beck Defendants are barred under § 8-103. As the amount in the college account falls well below the amount in controversy to maintain a suit in federal court, the Court will dismiss the claim related to that account, without prejudice.

## B. Claims Against the Government

In a two page motion filed without a supporting memorandum of law, the government moves to dismiss the claims against it on the ground that this Court lacks jurisdiction over those claims. Because this is a contract action against the United States in which more than $10,000 is at issue, the government contends

that, under the Tucker Act, 28 U.S.C. § 1491, exclusive

jurisdiction over this action lies in the United States Court of

Claims.  FedEx opposed the motion, arguing that its claim

against the government does not fall under the Tucker Act as it

is a claim for equitable and declaratory relief and not for

monetary damages.  In the alternative, FedEx argues that, even

if its claim is subject to the Tucker Act, this Court would have

ancillary or supplemental jurisdiction over the claim and should

retain jurisdiction so as not to require FedEx to pursue its

claims against the Beck Defendants in one court and its claim

against the government in another.  The government filed no

reply to FedEx's opposition.

Given that the Court will dismiss FedEx's claims against

the Beck Defendants, FedEx's argument based upon ancillary

jurisdiction is of no import.  The Court agrees, however, that

FedEx's claim is not governed by the Tucker Act.

Under the Tucker Act, 28 U.S.C. § 1491(a)(1), the United

States Court of Claims has exclusive jurisdiction to render

judgment upon any claim against the United States for money

damages exceeding $10,000 that is "founded either upon the

Constitution, or any Act of Congress or any regulation of an

executive department, or upon any express or implied contract

with the United States, or for liquidated or unliquidated

damages in cases not sounding in tort."  Eastern Enter. v.

Apfel, 524 U.S. 498, 520 (1998).  "Although the actual language

of the Tucker Act does not specifically prohibit the Court of

Federal Claims from issuing injunctive relief, the United States

Supreme Court has recognized, as a general rule, that 'the Court

of [Federal] Claims has no power to grant equitable relief.'"

Randall v. United States, 95 F.3d 339, 347 (quoting Richardson

v. Morris, 409 U.S. 464, 465 (1973)).

     In arguing that this Court and not the Claims Court has

jurisdiction over its claim against the government for the

seized funds, FedEx relies upon the Supreme Court's decision in

Bowen v. Massachusetts, 487 U.S. 879 (1988).  Bowen involved a

state's claim for Medicaid reimbursements.  The government

argued that the state sought money damages against the United

States and that the action was therefore within the exclusive

jurisdiction of the Claims Court.  The Supreme Court rejected

this argument, drawing a distinction between "monetary relief"

and "money damages":

          Our cases have long recognized the distinction between
          an action at law for damages – which are intended to
          provide a victim with monetary compensation for an
          injury to his person, property or reputation – and an
          equitable action for specific relief – which may
          include an order providing for . . . the recovery of
          specific properties or monies . . . .  The fact that a
          judicial remedy may require one party to pay money to
          another is not sufficient reason to characterize the
          relief as "money damages."

487 U.S. at 893 (emphasis in <u>Bowen</u>).  The Court found that the state's suit was in the nature of an equitable action for specific relief, rather than money in compensation for losses suffered as a result of the government's refusal to make the payments.  Thus, the Court held that the district court had jurisdiction.

Here, FedEx seeks declaratory relief in that it has requested that this Court determine legal title to the seized funds, and equitable relief in that it has requested the return of specific identifiable property.  While its claim may be based in part on a breach of contract, FedEx seeks only equitable relief in the form of the return of specific funds and not monetary damages.  Thus, jurisdiction over FedEx's claim lies in this Court and not in the Court of Claims and the government's motion to dismiss must be denied.[4]

## III. CONCLUSION

While FedEx moves to amend the Complaint primarily to clarify the claims against the Beck Defendants, the Amended Complaint also clarifies the jurisdictional basis for the claims against the United States and thus the motion to amend will be granted.  For the reasons stated above, however, the claims

---

[4] While the Beck Defendants have argued that the government's "granting of FedEx's petition for remission is a nullity," ECF No. 16 at 6, and presumably would argue that the FedEx Contract is as well, the government has been silent as to the validity <u>vel non</u> of its agreement with FedEx.

against the Beck Defendants asserted in the Amended Complaint will be dismissed.  The government's motion to dismiss will be denied.  A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: October 6, 2011